*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 26, 2019

Plaintiff-Appellee,

v

No. 344784
Kalamazoo Circuit Court
LC No. 2016-001696-FC

JOEVIAIR ALIZE KENNEDY,

Defendant-Appellant.

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Defendant, Joeviair Alize Kennedy, appeals as of right his jury conviction for one count of armed robbery in violation of MCL 750.529 and one count of carrying a firearm during the commission of a felony (felony-firearm) in violation of MCL 750.227b. The trial court sentenced defendant to consecutive sentences of 17 years and 6 months to 40 years' imprisonment for the armed robbery charge and 2 years for the felony-firearm charge.[1] On appeal, defendant challenges the trial court's imposition of an upward-departure sentence as unreasonable and asserts that, because the evidence unequivocally established that he did not carry a firearm, the prosecution did not prove beyond a reasonable doubt the necessary elements for holding him criminally culpable for armed robbery or felony-firearm. Finding no merit in either argument, we affirm.

---

[1] The jury acquitted defendant of first-degree felony murder, MCL 750.316(1)(b), second-degree murder, MCL 750.317, and a second felony-firearm charge.

## I. PERTINENT FACTS

Jacob Jones was a student at Western Michigan University and lived off campus. On December 8, 2016, while Jones was playing video games with several friends, Jordan Waire[2] and defendant broke into his apartment. Brandishing a gun and wearing a red bandana, Waire demanded money, marijuana, and other belongings from everyone in the room. According to one witness, Jones "put his hands up in a motion of, you know, surrendering" and repeated that they would give the men anything they wanted. Waire pistol-whipped Jones and then shot him in the face. During the robbery, defendant "was standing in a position in which it made it look as though he had a firearm concealed." He showed no expression. In addition to defendant's posturing, Waire announced that defendant, too, was armed. As Waire began to search the apartment for additional items, he turned and said to defendant, "if anybody moves blast them." Defendant "nodded in agreement." Fearing for their lives, Jones's friends decided to act. One friend "stood up and tackled the individual with the gun" while another kicked him and a third wrestled with him. During the struggle, defendant "stepped in and tried to help" Waire by pushing and kicking at Jones's friends. The two men fled but quickly returned, seeking to recover defendant's cell phone, which had evidently fallen out of defendant's pocket during the struggle.

During the subsequent criminal investigation, law enforcement recovered a bullet casing wrapped in a red bandana among defendant's belongings. A ballistics expert testified that the fired cartridge case and the bullet obtained from Jones's autopsy were consistent. Law enforcement was also able to identify one of the cell phones found at Jones's apartment as belonging to defendant. At trial, the prosecutor also presented video testimonial evidence that defendant provided at co-defendant Waire's preliminary examination in which he admitted to his involvement in the armed robbery and implicated Waire as the shooter. During closing arguments, defense counsel conceded that defendant participated in the armed robbery and focused on the evidence supporting the felony-murder charge, emphasizing that defendant did not intend to cause Jones's death.

## II. DISCUSSION

Defendant first argues that the trial court's upward-departure sentence was unreasonable. Specifically, he contends the trial court unfairly concluded that he showed no remorse, likely considered conduct of which the jury acquitted him, and did not properly take into account how he aided the investigation. We disagree.

We review for reasonableness a sentence that departs from the applicable guidelines range. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied for appellate courts reviewing a sentence for reasonableness on appeal is

---

[2] On May 22, 2018, a different jury found Waire guilty of committing one count of felony-murder, three counts of felony firearm, one count of armed robbery, and one count of felon-in-possession arising out of this same incident.

abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). A trial court abuses its discretion by violating the principle of proportionality, " 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 459-460, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Although they are only advisory, this Court follows our Supreme Court's directive that the sentencing guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take . . . into account when sentencing . . . ." *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017), quoting *Steanhouse II*, 500 Mich at 474-475 (quotation marks omitted).

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencings. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [*Dixon-Bey*, 321 Mich App at 524-525 (citations omitted).]

To facilitate appellate review, the trial court must consult the applicable guidelines range and justify the sentence imposed by stating the cause for any departure. *Steanhouse II*, 500 Mich at 470. This means that the trial court must explain " 'why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been.' " *Dixon-Bey*, 321 Mich App at 525, quoting *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008).

The trial court assessed defendant's prior record variable (PRV) score at zero, putting him at PRV level A, and his OV score at 155, putting him at OV level VI, and resulting in a recommended minimum sentencing guidelines range of 108 to 180 months. The court sentenced defendant to 17½ years to 40 years' imprisonment, a two-and-a-half year upward departure from the recommended minimum sentencing range. The record shows that the trial court acknowledged defendant's family and community support, his cooperation with the pre-sentence investigator according to the Michigan Department of Corrections, his lack of criminal history, and the crucial information he provided in the early stages of the investigation of Jones's murder. Nevertheless, the trial court also pointed to circumstances surrounding commission of the armed robbery the court believed the guidelines inadequately reflected. Specifically, the court considered that defendant agreed with Waire to seek someone to rob, identified Jones as a target, took multiple steps to conceal his identity, and knew that Waire possessed a handgun. In addition, defendant did nothing during the course of the robbery to stop or deter Waire from pointing a gun inches away from Jones's face and shooting him, he did nothing to render aid to Jones after the shooting, and instead, he fought off the other robbery victims in an effort to free Waire. The court further noted that defendant had not expressed meaningful remorse, he had a prior relationship with the subject of his robbery because he knew Jones as a fellow college student, and he initiated the series of events that targeted Jones and led to the robbery of the five teenagers in the apartment. Because defendant's total offense variable (OV) score exceeded the

maximum score in defendant's scoring grid by 55 points, the court concluded that the grid cell did not adequately "capture all that is connected with the instant matter," and sentenced him accordingly.

We decline defendant's invitation to second-guess the trial court's assessment of defendant's relative level of remorse throughout the course of proceedings. We recognize that "[t]he sentencing of a defendant requires a trial court to rely on its experience as well as its overall perceptions adduced at trial[,]" and that "[t]he trial court is in a unique position to weigh many intangibles apparent only to those present at a trial." See *People v Kowalski*, 236 Mich App 470, 474-475; 601 NW2d 122 (1999). For the same reasons, we also decline to reassess the assistance defendant provided during the course of the investigation. Moreover, we find reasonable the trial court's explanation for the departure, which emphasized defendant's role and his conduct prior to and during the armed robbery. Notably, defendant's offense variable (OV) score was 155, substantially higher than the applicable sentencing guidelines grid, which maxed out at 100. Where, as here, a defendant has a relatively low PRV score and an OV score over 100, our Supreme Court expressly permits trial courts to "render a proportionate sentence above the highest minimum . . . because the Legislature did not contemplate a defendant with such a high OV score." See *Smith*, 482 Mich at 308-309.

We also reject defendant's corollary argument that the trial court may have improperly sought to punish defendant for felony-murder despite the jury's acquittal on that charge.[3] Although decided after defendant submitted his brief, this line of argument necessarily implicates our Supreme Court's recent decision in *People v Beck*, __ Mich __; __ NW2d __ (2019) (Docket No. 152934). In *Beck*, our Supreme Court held that a trial court violates a defendant's right to due process when it sentences him or her while relying on acquitted conduct. See *Beck*, __ Mich at ___; slip op at 22. Because the trial court explicitly stated that it was *not* relying on acquitted conduct[4] and set forth an independent justification for the upward departure,

_____

[3] Defendant contends in his brief that "it's almost as if the trial court felt that [defendant] should have been convicted as an aider and abettor to Mr. Jones' murder and that [defendant] got off light."

[4] The trial court stated in relevant part:

In calculating a just and reasonable sentence, I am also mindful that although charged as an accomplice to murder, a unanimous twelve member jury found [defendant] not guilty of aiding and abetting a murder.

The government had the opportunity to convince a jury that [defendant] should be held responsible for murder, but failed in that effort. [Defendant] stands before me to be sentenced after having been convicted of armed robbery, not murder.

we do not believe that the trial court sought in any way to subvert the jury's felony-murder acquittal.[5]

Finally, defendant argues that, because he was unarmed during commission of the robbery, the evidence was insufficient to convict him of armed robbery and felony-firearm, and his convictions were against the great weight of the evidence. We disagree. We review a challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We "review the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). Because defendant did not preserve the great-weight issue, our review is for plain error affecting defendant's substantial rights. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011).

Defendant provides no argument as to why an aiding-and-abetting theory of prosecution did not adequately support his convictions. Aiding and abetting is not a separate criminal offense. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006); see also MCL 767.39 (abolishing distinction between accessories and principals). "Rather, being an aider and abettor is simply a theory of prosecution that permits the imposition of vicarious liability for accomplices." *Id.* at 6 (quotation marks and citation omitted). Therefore, anyone who "procures, counsels, aids, or abets" in the commission of a criminal offense may be prosecuted as if he or she committed the offense directly. MCL 767.39. On the record before us, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that defendant aided and abetted in the commission of armed robbery and felony-firearm. Defendant admitted as much in his testimony and his closing argument, and several witnesses testified as to his role. See *People v Smielewski*, 235 Mich App 196, 207; 596 NW2d 636 (1999).

Nor was defendant's conviction against the great weight of the evidence.

> A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. Generally, a verdict may only be vacated when the verdict is not reasonably supported by the evidence, but rather it is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations. [*People v Solloway*, 316 Mich App

---

[5] To the extent defendant now asserts that OV 3 was misscored—to which his counsel did not object at sentencing—this was a multiple offender case and 100 points must be assessed, as Waire was assessed 100 points for OV 3 associated with his armed robbery conviction. MCL 777.33(2)(a) ("In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders must be assessed the same number of points") and MCL 777.33(2)(b) ("Score 100 points if death results from the commission of a crime and homicide is not the sentencing offense").

174, 182-183; 891 NW2d 255 (2016) (quotation marks and citations omitted; alteration in original).]

Defendant does not cite any basis for why he believes the evidence preponderates against the jury's verdict. Defendant's only argument is that defendant was unarmed during the commission of the robbery. Under the aiding-and-abetting theory pursued by the prosecution and accepted by the jury, that fact was irrelevant.

Affirmed.


/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering